UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| VALERIE PHILPOTT,<br> *Plaintiff*, | )<br>)<br>) | |
|  *vs.* | )<br>) | Case No. 1:13-cv-01708-JMS-DKL |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br> *Defendant*. | )<br>)<br>)<br>) | |

# ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Valerie Philpott applied for disability insurance benefits from the Social Security Administration ("SSA") on July 1, 2010. After a series of administrative proceedings and appeals, including a hearing in July 2011 before Administrative Law Judge ("ALJ") James R. Norris, the ALJ determined that Ms. Philpott was not entitled to benefits. The Appeals Council subsequently vacated the ALJ's decision and remanded the case for a new hearing and decision. In April 2012, the ALJ held another hearing, and in May 2012, the ALJ determined that Ms. Philpott was not entitled to benefits. This time, the Appeals Council denied Ms. Philpott's request for a review of the ALJ's decision, rendering that decision the final decision of the Defendant, Commissioner of the SSA ("the Commissioner"), for the purposes of judicial review. *See* 20 C.F.R. § 404.981. Ms. Philpott then filed this action under 42 U.S.C. § 405(g), requesting that the Court review the Commissioner's denial.

## I.
### STANDARD OF REVIEW

The Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review,

"[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted) (internal quotation marks omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (citations omitted).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court *must* affirm the denial of benefits. Otherwise the Court will remand the matter back to the SSA for further consideration; only in rare cases can the Court actually order an award of benefits. *See Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

To evaluate a disability claim, an ALJ must use the following five-step inquiry:

(1) [is] the claimant . . . currently employed, (2) [does] the claimant ha[ve] a severe impairment, (3) [is] the claimant's impairment . . . one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, . . . can she perform her past relevant work, and (5) is the claimant . . . capable of performing any work in the national economy[?]

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted). After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC"), which represents the claimant's physical and mental abilities considering all of the claimant's impairments. The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e).

# II.
## BACKGROUND

Medical records show that Ms. Philpott has suffered from various physical and mental impairments. The Court discusses this medical evidence in more detail below when necessary to address the issue raised by Ms. Philpott on appeal.

Ms. Philpott applied for disability insurance benefits, alleging that she has been disabled since January 1, 2004. [Filing No. 16-6 at 35.] She last met the insured status requirements of the Social Security Act on December 31, 2004, and at that time was forty-nine years old. [Filing No. 16-2 at 22.]

In his first decision, the ALJ determined at Step Four that Ms. Philpott was not entitled to disability insurance benefits. [Filing No. 16-3 at 9-20.] The Appeals Council granted Ms. Philpott's request for review and remanded the case back to the ALJ for reconsideration. [Filing No. 16-3 at 27.] On remand, the ALJ again determined that Ms. Philpott was not entitled to disability insurance benefits. [Filing No. 16-2 at 31.] The Appeals Council denied Ms. Philpott's request for review of the ALJ's second decision, making the ALJ's second decision the final decision of the Commissioner. [Filing No. 16-2 at 2.]

In his second decision, the ALJ found as follows:

- At Step One, the ALJ found that Ms. Philpott did not engage in substantial gainful activity[1] "during the period from her alleged onset date of January 1, 2004, through her date last insured of December 31, 2004." [Filing No. 16-2 at 22.]

- At Step Two, the ALJ found that Ms. Philpott suffered from the following medically determinable impairments: osteoporosis; degenerative disc disease; lumbar strain; a depressive disorder; an anxiety disorder; and polysubstance abuse of cannabis and barbiturates. [Filing No. 16-2 at 22-23.] However, the ALJ determined that none of

---

[1] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. §§ 404.1572(a), 416.972(a).

these impairments, individually or in combination, were severe. [Filing No. 16-2 at 24-30.] Specifically regarding Ms. Philpott's mental impairments, the ALJ assessed the four paragraph B criteria—"[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation," 20 C.F.R., Part 404, Subpart P, App. 1—and determined that her mental impairments caused no more than "mild" limitations in the first three functional areas and that she had no episodes of decompensation. [*See* Filing No. 16-2 at 26-28.] The ALJ therefore determined that her mental impairments were not severe. [Filing No. 16-2 at 28.]

Based on these findings, the ALJ did not need to reach the final three steps and concluded that Ms. Philpott was not entitled to disability insurance benefits. [Filing No. 16-2 at 31.] Ms. Philpott filed the instant appeal, challenging the ALJ's second decision denying her disability insurance benefits.

### III.
#### DISCUSSION

Ms. Philpott raises one issue on appeal. She contends that the ALJ failed to consider evidence that she suffered from a personality disorder during the relevant period—that is, the period between her alleged onset date of January 1, 2004, and the date she was last insured, December 31, 2004. [Filing No. 22 at 7-8.] Specifically, she argues that two doctors diagnosed her, in 2009 and 2011 respectively, with a personality disorder, and because a "'personality disorder' stems no later than from early adulthood," these diagnoses "necessarily relate back to the period on and before [Ms.] Philpott's December 31, 2004 date last insured." [Filing No. 22 at 7 (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 2000)).] It was error for the ALJ to not consider her personality disorder, Ms. Philpott maintains, because at Step Two the ALJ is required to "consider all of her impairments in combination." [Filing No. 22 at 7-8.]

The Commissioner responds by first acknowledging that the medical opinions that Ms. Philpott had a personality disorder were in the record before the ALJ. [Filing No. 31 at 10.] The

Commissioner also does not disagree with Ms. Philpott that the personality disorder diagnosis relates back to the relevant time period. However, the Commissioner argues that the mere diagnosis of a personality disorder "does not alone establish the severity of the impairment and its resulting limitations." [Filing No. 31 at 11.] The Commissioner points the Court to the testimony of Dr. Olive, the psychological medical expert who testified at Ms. Philpott's hearing. [Filing No. 31 at 11.] According to the Commissioner, Dr. Olive's testimony reveals that he reviewed the relevant medical records, including the records containing the diagnoses of personality disorder, but testified that Ms. Philpott's mental impairments only caused mild limitations in her functioning and thus were not severe. [Filing No. 31 at 11-12.] Moreover, says the Commissioner, "[b]ecause the diagnosis of a condition does not indicate its severity, adding [the personality disorder] to the mix of mental diagnoses in 2004 does not show that [Ms. Philpott] had a severe mental impairment in the relevant time period." [Filing No. 31 at 12.] Ms. Philpott did not file a reply brief and thus did not respond to any of the Commissioner's arguments. [*See* Filing No. 32 at 1.]

At Step Two, the ALJ is required to determine "whether the claimant in fact has an impairment or combination of impairments that is 'severe.'" *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) (quoting 20 C.F.R. § 404.1520(a)(4)(ii)). "A severe impairment is an impairment or combination of impairments that 'significantly limits [one's] physical or mental ability to do basic work activities.'" *Id.* (quoting 20 C.F.R. § 404.1520(c)); *see* 20 C.F.R. § 404.1521(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). It is the claimant's burden to prove "that [s]he was disabled before the expiration of h[er] insured . . . to

be eligible for disability insurance benefits." *Shideler v. Astrue*, 688 F.3d 306, 311 (7th Cir. 2012).

Ms. Philpott has not carried her burden of showing that the ALJ erred in concluding that she did not suffer from a severe mental impairment. The ALJ determined that none of Ms. Philpott's mental impairments were severe, individually or in combination, because they did not significantly limit Ms. Philpott's ability to perform basic work activities. [*See* Filing No. 16-2 at 26-30.] Although the ALJ did not specifically discuss the personality disorder diagnoses, the ALJ received expert testimony from Dr. Olive who reviewed the records containing these diagnoses before testifying. [Filing No. 16-2 at 51-52.] The ALJ asked Dr. Olive what his opinion was "with respect to any mental impairments shown," and Dr. Olive responded, among other things, that it was difficult "to say what the function limitations" would be and that he "would probably characterize them as mild . . . based on [the] very limited data." [Filing No. 16-2 at 52.] The ALJ relied on this testimony in concluding that Ms. Philpott's mental impairments were not severe. [*See* Filing No. 16-2 at 29-30 (finding that Dr. Olive's testimony was entitled to "great weight" and noting that "Dr. Olive testified that there was no evidence to show what the claimant's functional limitations were in 2004, but that [Dr. Olive] inferred they were no more than mild because of the lack of 2004 documentation establishing limitation at that time").]

Ms. Philpott's attempt to undermine this conclusion by pointing out that the ALJ failed to evaluate evidence that she suffered from a personality disorder during the relevant period is unavailing. [Filing No. 22 at 7-8.] An impairment or combination of impairments are severe when they "'significantly limit[] [one's] physical or mental ability to do basic work activities.'" *Castile*, 617 F.3d at 926 (quoting 20 C.F.R. § 404.1520(c)). But the mere "diagnosis of an impairment does not establish the severity of the impairment." *Flint v. Astrue*, 2013 WL 30104,

*5 (S.D. Ind. 2013) (citing *Estok v. Apfel*, 152 F.3d 636, 639-40 (7th Cir. 1998)); *see Stanley v. Astrue*, 2012 WL 1158630, *8 n.8 (N.D. Ind. 2012) ("[T]he diagnosis of an impairment does not alone establish its severity and its resulting limitations."); *see also Kasarsky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2003) (affirming the ALJ's determination that the claimant's depression and dysthymia were non-severe impairments because there was evidence that the claimant "had been able to work despite these problems" and no "doctor commented on any lingering effects" of these impairments); *Bunch v. Heckler*, 778 F.2d 396, 401 (7th Cir. 1985) (affirming the ALJ's determination that the claimant's mental impairments were non-severe because the evidence was "sufficient to support a conclusion that her mental impairment did not significantly limit her ability to do basic work activities"). Therefore, Ms. Philpott's sole reliance on diagnoses to assail the ALJ's step-two conclusion is insufficient.

Simply put, impairments are classified as severe or non-severe based on the limitations they impose on the claimant's ability to perform basic work activities. *See* 20 C.F.R. § 404.1520(c); 20 C.F.R. § 404.1521(a). Accordingly, Ms. Philpott cannot undermine the ALJ's step-two determination without pointing to evidence of resulting limitations—that is, effects of her personality disorder—that the ALJ failed to consider. Moreover, Ms. Philpott does not point the Court to any legal authority standing for the proposition that an unconsidered and retroactively applied diagnosis alone constitutes reversible error at Step Two. For these reasons, the Court cannot conclude that the ALJ erred by concluding at Step Two that Ms. Philpott's impairments were non-severe.

## IV.
### CONCLUSION

Accordingly, the ALJ's denial of relief is **AFFIRMED**. Judgment shall issue accordingly.

August 26, 2014

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**